UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DUPERON CORPORATION, and
DUPERON INNOVATION, LLC

VERSUS

SCREENING SYSTEMS INTERNATIONAL,
INC., and M & L ENGINE, LLC,
    Defendants.

CIVIL ACTION

NO. 12-296-BAJ-DLD

## RULING AND ORDER

This matter is before the Court on Defendant's, M & L Engine, LLC, ("Defendant M & L" or "M & L"), Motion to Dismiss for Failure to State a Claim (doc. 13). Plaintiffs, Duperon Corporation, and Duperon Innovation, LLC ("Plaintiffs" or "Duperon") oppose the motion (doc. 17) and Defendant M & L replied to the opposition (doc. 20). Jurisdiction is grounded in 28 U.S.C. §§ 1331, 1338, and 1367.

## BACKGROUND

This case alleges patent infringement and claims relating to several business torts. Plaintiffs Duperon Corporation and Duperon Innovation, LLC are entities organized under the laws of the state of Michigan (Compl. ¶¶ 1-2). Defendant Screening Systems International Inc. (SSI) is a Louisiana Corporation that manufactures a screen scraper machine for removing debris out of waterways. M & L Engine, LLC (M & L) is a Louisiana Limited Liability

Corporation and sales representative for SSI. Plaintiffs are the owners of the entire right, title, and interest in and to United States Patent Number 5,425,875 ("the '875 Patent) entitled "Screen Scraper for Trash Racks", which is a valid and enforceable patent that issued on June 20, 1995 (Compl. ¶ 11). Plaintiffs do not claim to have a registered trademark for any of their trade names. However, Plaintiffs claim that they have marked the apparatuses that they have manufactured or sold that embody the invention in compliance with the patent marking requirements of 35 U.S.C. § 287(a).

Both parties agree that in the summer of 2011, Plaintiffs submitted a bid for the Summerfield Terrebonne Parish Project[1] that included a screen scraper that allegedly is embodied by the '875 Patent (Compl. ¶ 14). Both parties further agree that Defendant also submitted a competing bid for the project (Compl. ¶ 16). Plaintiffs aver that the bid contract specifications for the project included a requirement for a "Duperon Screen Scraper for Trash Racks" or "equivalent" (Compl. ¶ 17). According to Plaintiffs, Defendant SSI also designed a screen scraper machine for removing debris out of waterways.

Both parties agree that Defendant was awarded the Terrebonne Parish Project bid because their bid price was lower than Plaintiffs' price (doc. 13-1, at 5; Compl. ¶ 16). Plaintiffs aver that they later learned that Defendant secured the bid by offering four screen scrapers that allegedly infringe the '875 patent and Plaintiffs demanded that all bids be withdrawn (Compl. ¶¶ 20, 23). In response to

---

[1] The Summerfield Terrebonne Parish called for the manufacture and installation of four machines that were to be installed for the Terrebonne Parish Consolidated Government in Houma, Louisiana.

Plaintiffs' demand, Defendant allegedly offered, as part of its revised bid, an equivalent screen scraper that does not infringe the '875 Patent. (Compl. ¶ 28; doc. 13-1, at 6). Defendant did not obtain preapproval[2] for the purported equivalent screen scraper, and Plaintiffs challenge the new screen scraper's effectiveness and claim infringement (doc. 17, at 5).

Plaintiffs filed suit against Defendant on May 21, 2012 in the United States District Court for the Middle District of Louisiana (doc. 13-1, at 6). On June 15, 2012, Defendant M & L Engine filed its Motion to Dismiss (doc. 13).

## LEGAL STANDARD

To survive a motion for dismissal, a plaintiff must set forth enough factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, "a plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim." *Enterprises v. MacGreagor (USA) Inc.*, et al., 322 F.3d 371 (5th Cir. 2003). The court does not look beyond the face of the pleadings when determining whether a plaintiff has stated a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

Plaintiffs claim damages and injunctive relief arising out of Defendant's acts of patent infringement, Federal unfair competition, tortious interference with

---

[2] According to both parties, the Terrebonne Parish Project Contract called for a Duperon Screen Scraper for Trash Racks or an "equivalent" (Compl. ¶ 16). Both parties concede that the contract specifications further require that a manufacturer of an "equivalent" screen scraper pre-submit and gain pre-approval prior to entering the bidding process (Compl. ¶ 21; doc. 13-1, at 2).

3

business, intentional interference with contractual relations, conspiracy in restraint of trade, and the Louisiana Unfair Trade Practices Act (LUTPA). Defendant has not challenged Plaintiffs' patent infringement claim (Count I) in their Motion to Dismiss.[3] Thus, movant's Motion to Dismiss only pertains to the remaining Counts II through VI of the complaint. Each claim is discussed in turn.

## ANALYSIS

### I. Unfair Competition Claim (Count II)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for unfair competition. The Act in pertinent part states:

> "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or misleading representation of fact, which-
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. 1125(a).

Under Federal law, unfair competition refers to situations in which a "defendant pass[es] off his goods or services as those of the plaintiff by virtue of substantial similarity between the two," leading to consumer confusion. *Chevron*

---

[3] Defendants aver that Plaintiffs' complaint should be dismissed with respect to Counts II-VI and disregard Plaintiffs' claim for patent infringement (Count I) (doc. 13-1, at 5; doc. 17, at 5).

4

*Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 701 (5th Cir. 1981) (citing *Boston Prof'l Hockey Assoc'n v. Dallas Cap & Emblem Mfg. Co.*, 510 F.2d 1004,1010 (5th Cir. 1975).

An action for unfair competition applies to unregistered marks when the "unregistered marks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source." *Boston Prof'l Hockey Assoc'n v. Dallas Cap & Emblem Mfg. Co.*, 510 F.2d 1004, 1010 (5th Cir. 1975). Further, likelihood of confusion is the essential ingredient for claims of unfair competition under the Lanham Act. *Falcon Rice Mill v. Community Rice Mill*, 725 F.2d 336 (5th Cir. 1984).

The Fifth Circuit has held that when determining whether a likelihood of confusion exists, courts must consider the following nonexhaustive list of factors: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. *Westchester Media v. PRL USA Holdings Inc*, 214 F.3d 658, 664 (5th Cir. 2000).

Here, the Court finds that Plaintiffs do not allege a valid cause of action for unfair competition under the Lanham Act. The Court concludes this for several reasons.

First, Defendant asserts, and the Court agrees, that Plaintiffs do not sufficiently allege the type of mark infringed, the similarity between the two marks, the similarity of the products or services, and Defendant's intent, or any evidence of actual confusion.

Second, the Court is not persuaded by Plaintiffs' reliance on the *Taquino*[4] case. The issue in *Taquino* was whether: (1) Taquino/E.P.I., Inc. (EPI) made a false statement of fact about their product; (2) statements deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) Taquino/EPI caused its products to enter interstate commerce, and (5) Teledyne Monarch Rubber (TMR)/Advanced Industrial Marine Services (AIMS) has been or is likely to be injured as a result. *Id.* at 1500. The Court held that: "A) The deceptions were not material in that they were not likely to influence the purchasing decision; B) The statements did not actually deceive nor did they have the capacity to deceive a substantial number of potential buyers; C) The alleged false and deceptive 'advertising' is not the type of activity the Lanham Act was designed to prevent." *Id.*

Plaintiffs are unable to allege a claim of false advertisement consistent with *Taquino*. Plaintiffs do not allege facts to suggest that Defendant advertised its machine to deceive customers. Both parties concede that it was the Terrebonne Parish Officials and not the Defendant that set the specifications requesting a

---

[4] *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488 (5th Cir. 1990).

"Duperon Screen Scraper for Trash Racks" or "equivalent." The Terrebonne Parish Officials then made the selection between the two parties (Compl. ¶¶ 16-17). Defendant merely submitted the project plan according to the specifications outlined by the Parish. The facts do not indicate an effort to deceive through false advertisement when Defendant submitted its project plan to the Parish.[5] Moreover, Plaintiffs have not referenced any statements to customers by Defendant that actually deceived or had the capacity to deceive a substantial number of potential buyers as discussed in *Taquino*.[6] 893 F.2d at 1500.

Because Plaintiffs do not allege facts sufficient to support a valid cause of action for unfair competition under the Lanham Act, Defendant is entitled to dismissal of this claim.

## II. Claim for Intentional Interference with Business (Count III)

The Louisiana Supreme Court has recognized a cause of action arising under article 2315 for tortious interference with business. *Graham v. St. Charles St. Railroad*, 47 La. Ann. 1656, 18 So. 707 (1895). Under Louisiana law, a claim of tortious interference requires a plaintiff to show improper and intentional influence. *Dussony v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 602 (5th Cir. 1981). Further, the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party. *Marshall Invs. Corp. v. R.P. Carbone Co.*, 2006

---

[5] Plaintiffs also have not alleged facts to show that Defendant has any previous pattern or practice of false advertisement.
[6] The Court dismisses Plaintiffs' unfair competition claim without prejudice to refiling. In this instance, under the facts alleged, Defendant merely submitted the project plan according to the specifications outlined by a third party. The phrase "Duperon equivalent" did not originate with Defendant.

WL 2644959, at *5 (E.D. La Sept. 13, 2006). In addition, the plaintiff must demonstrate actual malice. *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La. App. 4 Cir. 3/6/02), 812 So. 2d 834, 841.

Here, the Court finds that Plaintiffs have alleged sufficient facts to support a cause of action for tortious interference with business. This is demonstrated throughout Plaintiffs' Complaint.

First, Plaintiffs have alleged facts indicating "bad faith" or "malicious intent" by Defendant. *Id.* Both parties concede that they were engaged in a competitive bid process, and Defendant was ultimately awarded the bid because it offered a lower price for a machine that met the requirements of the specification (Compl. ¶¶ 14, 16, 28, 29). However, Plaintiffs further allege that after the bidding process: 1) Plaintiffs alleged patent infringement and Defendant conceded; 2) Defendant promised not to manufacture infringing machinery and that it would withdraw its bid; 3) Defendant stated by letter, on January 31, 2002, that it had withdrawn its bid; but 4) Defendant later presented a bid which was still considered an "equivalent" to Plaintiffs' machine (Compl. ¶¶ 26, 27, 30, 31, 33). Defendant's actions ultimately prevented Plaintiffs from dealing with a third party and Plaintiffs allege documentation of these facts with email correspondence between Plaintiffs and Defendant.

Second, Plaintiffs allege facts suggesting improper and intentional influence on the part of Defendant with the third party. Both Parties concede that: 1) each manufacturer of an "equivalent" machine for the Terrebonne Parish

8

Project bid was required to pre-submit and gain pre-approval of their screen scraper machine; 2) Defendant's revised bid did not follow the proper process to obtain pre-approval of the equivalent screen; yet 3) Terrebonne Parish still awarded Defendant the project bid and Defendant does not allege facts indicating why it was subject to a different approval process in this instance (Compl. ¶¶ 26, 27, 30, 31, 33). Without facts to justify the different approval standard applied to Defendant, the Court presumes that Plaintiffs' argument of improper influence is a plausible one. Each of the facts alleged by Plaintiffs is sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, Plaintiffs have alleged facts sufficient to bring a claim under the tort.

Because Plaintiffs allege facts sufficient to support a valid cause of action for intentional interference with business, Defendant is not entitled to dismissal of this claim.

### III. Claim for Intentional Interference with Contractual Relations (Count IV)

The Louisiana Supreme Court has recognized a cause of action for tortious interference with contract within the limited confines of a corporate officer's duty to refrain from intentional and unjustified interference with a contractual relationship between his employer and a third party. *See Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1387-91 (5th Cir.1991) (discussing *9 to 5 Fashions v. Spruney*, 538 So.2d 228 (La.1989)).

Further, the elements of a tortious interference with contract claim are the following:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer. *Dorsey v. N. Life Ins. Co.*, CIV.A. 04-0342, 2005 WL 2036738 (E.D. La. Aug. 15, 2005).

Here, Plaintiffs have not alleged facts to support a cause of action for intentional interference with contractual relations. The Court finds that Plaintiffs' participation in a competitive bid for the Terrebonne Parish Project does not constitute a contract or a legally protected interest. Although Plaintiffs allege that they have contracted with the municipality in the past, such is insufficient to show interference with the contract at issue. According to the record, neither party had any legally protected interests during the competitive bidding process and Defendant was ultimately awarded the contract.[7] Thus, Plaintiffs have not alleged facts to support the first element of the claim.

---

[7] The Court is not persuaded by Plaintiffs' reliance on *Nolan Contracting, Inc. v. Regional Transit Authority*, for the assertion that Plaintiffs have properly pled a cause of action for intentional interference with contractual relations. 651 F. Supp. 23, 24 (E.D. La. 1986). The *Nolan* case involved a plaintiff's rights to due process and equal protection under the Fifth and Fourteenth Amendments. *Id.* at 24. The case also involved a plaintiff's statutory rights under the Civil Rights Act and the Louisiana Public Bid Law. *Id.* Plaintiffs have failed to cite Louisiana case authority supporting a cause of action for intentional interference with contractual relations under the circumstances alleged in this suit.

Because Plaintiffs do not allege facts sufficient to support a valid cause of action for intentional interference with contractual relations under Louisiana law, Defendant is entitled to dismissal of this claim.

## IV. Antitrust Claim and Monopoly Claim (Count V)

Under the Louisiana antitrust statute, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." La. Rev. Stat. § 51:122(A). Courts have recognized that restraints against trade may be either horizontal or vertical. Vertical restraints on trade are imposed by persons at different levels of distribution, usually by one higher up the distribution chain than the party restrained. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 730, 108 S.Ct. 1515, 1522-23, 99 L.Ed.2d 808 (1988); *Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292, 295 (5th Cir.1981). Moreover, the antitrust laws were enacted for "protection of competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Further, the anti-monopoly statute states, in pertinent part: "No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state." LSA-R.S. 51:123.

Here, the Court finds that Plaintiffs' antitrust claim amounts to only conclusory statements that Defendant has conspired to restrain trade or commerce. Thus, the antitrust claim must be dismissed as a matter of law.

11

Plaintiffs' assertions that once the bid was closed, its individual representatives were prevented from future dealings with the contract does not amount to a restraint on competition.[8] Both parties concede that Plaintiffs enjoyed a "longstanding relationship for many years" with the municipality in which it received numerous contract bids (Compl. ¶ 13). Additionally, both parties also concede that the reason Defendant received the initial bid in this instance was because it offered a more competitive price (Compl. ¶ 13). The circumstances do not constitute a constraint on competition solely because Plaintiffs were individually prevented from entering into the contract with the municipality in this one instance.[9]

Further, the Court finds Plaintiffs' claim for attempted monopolization insufficient. Defendant asserts, and the Court agrees, that Plaintiffs lack sufficient factual allegations to suggest that Defendant had the market power or ability to control prices or exclude competition as is required under the Louisiana statute. La. Rev. Stat. 51:123.

---

[8] The Court is not persuaded by Plaintiffs' reliance on *Alton Ochsner Med. Found. v. Fischbach & Moore, Inc*, where the court held that a plaintiff's lack of documentation or personal knowledge of a defendant's involvement in an alleged bid rigging scheme did not mean plaintiff's claim should be dismissed. CIV. A. 89-2353, 1990 WL 111010 (E.D. La. July 27, 1990). Similarly, the Court is not persuaded by Plaintiffs' reliance on *Cavalier Clothes, Inc. v. Major Coat Company*, in which the issue was whether the plaintiff's statutory antitrust claim under the Donnelly Act, was time-barred. CIV. A. 89-3325, 1991 WL 125179 (E.D. Pa. June 26, 1991). Neither case supports Plaintiffs' assertions that Defendant's actions in this case constitute conspiracy in constraint of trade.

[9] The Court dismisses Plaintiffs' antitrust claim without prejudice to refiling. Here, Plaintiffs fail to demonstrate a restraint on competition. Plaintiffs merely allege that they were unable to obtain the contract bid in this individual instance.

Because Plaintiffs do not allege facts sufficient to support a valid cause of action for conspiracy in constraint of trade under Louisiana law, Defendant is entitled to dismissal of this claim.

**V. Louisiana Unfair Trade Practices Act (Count VI)**

The Louisiana Unfair Trade Practices Act (LUTPA) declares unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). Further, "the range of prohibited practices under LUTPA is extremely narrow." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010). The Fifth Circuit has followed the narrow interpretation of the act finding that the private cause of action is limited to consumers and business competitors. *Gardes Directional Drilling v. U.S. Turnkey Exploration Co.*, 98 F.3d 860, 868 (5th Cir. 1996).

Finally, a defendant's motivation is a critical factor and the actions must have been taken with the specific purpose of harming the competition. *SDT Indus., Inc. v. Leeper*, 34,655 (La. App. 2 Cir. 6/22/01), 793 So. 2d 327, 333. Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA. *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1060.

Here, the Court finds that Plaintiffs have alleged sufficient facts to support a cause of action under LUPTA. Plaintiffs' Complaint contains sufficient allegations of deception and unethical conduct.

First, as previously noted, Plaintiffs have alleged facts indicating "bad faith" or "malicious intent" by Defendant. Plaintiffs allege that after the competitive bidding process: 1) Plaintiffs alleged patent infringement and Defendant conceded; 2) Defendant promised not to manufacture infringing machinery and that it would withdraw its bid; 3) Defendant stated by letter, on January 31, 2002, that it had withdrawn its bid; but 4) Defendant later presented a bid which was still considered an "equivalent" to Plaintiffs' machine (Compl. ¶¶ 26, 27, 30, 31, 33). Further, Defendant concedes that it was able to circumvent the required pre-approval process in its second bid for the project. This was after withdrawing its first bid due to patent infringement. Each of the facts alleged by Plaintiffs is sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, Plaintiffs have alleged facts sufficient to bring a claim under LUPTA.

Because Plaintiffs allege facts sufficient to support a valid cause of action under the Louisiana Unfair Trade Practices Act, Defendant is not entitled to dismissal of this claim.

## VI. The Court's Findings and Conclusion

Accordingly, the Court finds that Plaintiffs do not allege facts to suggest that Defendant advertised its machine to deceive customers. Because Plaintiffs

14

do not provide factual content sufficient to support their unfair competition claim under the Lanham Act, Defendant is entitled to dismissal of Count II.

In contrast, the Court finds that Plaintiffs have sufficiently pled that Defendant engaged in actions in bad faith which ultimately prevented Plaintiffs from dealing with a third party. Because Plaintiffs provide factual content sufficient to support a claim for intentional interference with business, Defendant is not entitled to dismissal of Count III.

The Court further finds that Plaintiffs' participation in a competitive bid for the Terrebonne Parish Project does not constitute a contract or a legally protected interest. Because Plaintiffs do not provide factual content sufficient to support their intentional interference with contractual relations claim under Louisiana law, Defendant is entitled to dismissal of Count IV.

Additionally, the Court finds that Plaintiffs' antitrust claim amounts to only conclusory statements. Moreover, Plaintiffs' claim for attempted monopolization lacks sufficient factual allegations that Defendant had the market power or ability to control prices or exclude competition. Because Plaintiffs do not provide factual content sufficient to support their antitrust and monopoly claims, Defendant is entitled to dismissal of Count V.

Finally, the Court finds that Plaintiffs' complaint contains sufficient allegations of deception and unethical conduct to support a claim under LUTPA. Because Plaintiffs provide factual content sufficient to support their claim under

the Louisiana Unfair Trade Practices Act, Defendant is not entitled to dismissal of Count VI.

## CONCLUSION

For all of the foregoing reasons, Defendant's, M & L Engine, LLC, Motion to Dismiss for Failure to State a Claim (doc. 13) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** with regard to Counts II, IV, and V. The unfair competition claim, Count II, and the antitrust claim under Count V are dismissed without prejudice. The intentional interference with contractual relations claim, Count IV, and the monopolization claim under Count V are dismissed with prejudice. The motion is **DENIED** with regard to Counts III and VI. All findings in this ruling pertain to Defendant, M & L Engine, LLC.

Baton Rouge, Louisiana, January 16, 2013.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICTCOURT
MIDDLE DISTRICT OF LOUISIANA